UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
A.T., a minor, by and through his parent and
natural guardian SHA-KEEMA TILLMAN;
B.C., a minor, by and through KRISTI
COCHARDO; on behalf of themselves and
all others similarly situated,

                Plaintiffs,

     v.

DAVID HARDER, Broome County Sheriff, in his
official capacity, et al.

                Defendants.

17-CV-0817 (DNH)(DEP)

------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

Joshua T. Cotter
Susan M. Young
George Haddad
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202

DATED: March 12, 2018
       Syracuse, N.Y.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................... 1

ARGUMENT............................................................................................................. 2

    I.     DEFENDANTS DO NOT MEANINGFULLY OPPOSE PLAINTIFFS' CLAIM
          THAT SOLITARY CONFINEMENT FOR JUVENILES VIOLATES
          THE EIGHTH AND FOURTEENTH AMENDMENT.................................... 2

    II.    DEFENDANTS FAILURE TO CONSIDER MODIFICATIONS TO THEIR
          DISCIPLINARY POLICIES VIOLATES THE ADA AND SECTION 504............6

    III.   THE PROPOSED STATE COMMISSION ON CORRECTIONS REGULATIONS
          AND PLAINTIFFS' SETTLEMENT WITH THE CHENANGO VALLEY
          CENTRAL SCHOOL DISTRICT DO NOT MOOT PLAINTIFFS' CLAIMS
          AGAINST THE SHERIFF'S OFFICE DEFENDANTS..........................................8

CONCLUSION............................................................................................................ 10

**PRELIMINARY STATEMENT**

Despite this Court's decision in a nearly identical case, expert opinion that isolating juveniles causes them serious harm and does not make jails safer, and district court cases holding that placing juveniles in solitary for even short periods is unconstitutional, Defendants Harder, Smolinsky and Moore persist in their abusive practice of confining teenagers to small, barren cells for 23 hours a day for weeks or months at a time.

Defendants do not deny that juveniles, including those with mental illnesses, are routinely locked in cells for 23 hours or more as punishment for any rule violation, deprived of educational instruction without notice or an opportunity to be heard, and denied access to meaningful mental health supports. Rather, relying solely on the affidavits of corrections officers, defendants attempt to justify the placement of the named plaintiffs and certain declarants in solitary and to create issues of fact about some ancillary aspects of their conditions of confinement.[1] In opposing injunctive relief, defendants also rely on proposed regulations from the New York State Commission on Corrections whose implementation would not resolve plaintiffs' claims. Similarly, they claim that injunctive relief is not necessary based on their attorney's assertion --- without support from anyone in authority at the jail --- that defendants will cooperate with the school district to implement educational reforms agreed to by the district but not the jail.

Because none of defendants' arguments undermine the uncontested evidence showing that they continue an unconstitutional policy of confining juveniles in solitary for prolonged periods, plaintiffs have shown a substantial likelihood of success on their Eighth and Fourteenth

---

[1] As in their response to plaintiffs' class certification motion, Defendants do not include any citations to the record to support the factual allegations in their memorandum. Also, plaintiffs are again left to guess at the portion of cases the defendants intended to cite because they failed to cite to any pages.

1

Amendment claims. Because defendants do not even bother to claim that juveniles in solitary receive the educational services mandated by New York law and Individuals with Disabilities Education Act ("IDEA"), plaintiffs have also demonstrated a likelihood of success on those claims. Finally, because defendants do not rebut plaintiffs' showing that defendants place juveniles with mental health and intellectual disabilities in solitary without an individualized assessment, plaintiffs have established a likelihood of success on their Americans' with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") claims. Plaintiffs having also demonstrated that they satisfy all the other requirements for a preliminary injunction, this Court should grant the requested injunction.

## I. DEFENDANTS DO NOT MEANINGFULLY OPPOSE PLAINTIFFS' CLAIM THAT SOLITARY CONFINEMENT FOR JUVENILES VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENT.

In plaintiffs' opening brief, they established that defendants' policy and practice of placing 16-and 17-year old juveniles in solitary confinement violates the Eighth and Fourteenth Amendments to the U.S. Constitution. Pls' Mem. at 10-20. The Sheriff's Office does not dispute the key facts establishing plaintiffs' substantial likelihood of success on these claims. It does not dispute that juveniles, because of their developmental differences, face a greater risk of serious harm in isolation than adults, or that juveniles with mental illnesses are especially susceptible to serious harm from isolation. It does not dispute that it has a policy and practice of locking juveniles—including those with mental illnesses, histories of self-harm, and histories of suicidal intent—in their cells or in the Segregation Housing Unit ("SHU") for 23 hours a day for weeks or months at a time as a punishment for *any* rule violation. And it does not dispute that it was aware these policies pose a significant risk of serious harm to juveniles' health and safety.

Rather, the Sheriff's Office sets forth a series of arguments which confuse the standard applicable to plaintiffs' claims and focus on only some of the individual allegations set forth by the named plaintiffs and declarants. In support of these arguments they do not submit any expert testimony, or even a declaration from the Sheriff or another policy maker at the jail. Instead they rely solely on nine affidavits from corrections officers, an affidavit from their attorney, and a grab bag of inapposite and meritless legal arguments. Perhaps most telling is their conscious omission of any reference to this Court's decision, *V.W. v. Conway*, 236 F.Supp 3d 554 (N.D.N.Y. 2017), a related case with nearly identical facts.

As a preliminary matter, defendants distort both the test applicable to pretrial detainees challenging conditions of confinement as a deprivation of a liberty under the Fourteenth Amendment and the gravamen of plaintiffs' claim. Under the Fourteenth Amendment, a pretrial detainee can challenge conditions of confinement under two theories. He can show that the condition was intended to be punitive or was so excessive in relationship to the purported non-punitive legitimate government interest as to violate Due Process. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Or, he can challenge the conditions of confinement by showing the defendants acted with deliberate indifference --- defined objectively --- to the challenged conditions. *Darnell v. Piniero*, 849 F.3d 17, 35-36 (2d Cir. 2017). Under the *Darnell* test, it is not necessary to show intent to punish. *Id.* at 34. Plaintiffs rely on a *Darnell* theory. *See* Pls.' Mem. at 10.

Notwithstanding the clear holding of *Darnell* and plaintiffs' explicit reliance on it, defendants argue that "administrative classifications, even when classifications come with restrictive conditions, do not give rise to a liberty interest, absent evidence of an intent to punish." Defs.' Mem. at 10 (citing *Parson v. York*, No. 16-CV-167 (DNH/CFH), 2017 U.S.

3

Dist. LEXIS 28951(N.D.N.Y. Feb. 28, 2017).[2] *Parson* addressed a procedural due process claim challenging a placement into the SHU and set forth different standards for the process required for an administrative vs. a punitive placement. *See id.* at **10-14 . It has no application to a *Darnell*-based Fourteenth Amendment challenge to conditions of confinement. Here, as set forth in their opening brief plaintiffs have established and defendants do not dispute that they acted and continue to act with deliberate indifference to the substantial risk faced by juveniles placed in solitary confinement. *See* Pls' Mem at 10-20.

Defendants next attempt to argue that the long-recognized distinction between adults and juveniles exists only for purposes of sentencing. As this Court recognized in *V.W.*, under existing Supreme Court precedent, developmental differences between juveniles and adults are relevant in the Eighth Amendment context. 236 F. Supp. 3d at 583 (citing *Miller v. Alabama.*, 567 U.S. 460 (2012), *Roper v. Simmons*, 543 U.S. 551, 578 (2005), *Graham v. Florida*, 560 U.S. 48, 82). Defendants contend, relying solely on *Hughes v. Judd,* 108 F. Supp. 3d 1167 (M.D. Fla. 2015), that those Supreme Court decisions should be applied only to sentencing. Not only does this argument fly in the face of *V.W.*, but *Hughes* itself does not hold the developmental differences between juveniles and adults are irrelevant in an 14th Amendment conditions-of-confinement analysis. *See Hughes* 108 F. Supp. 3d at 1181. In this case, the <u>only</u> competent evidence is that solitary poses a greater risk of harm to juveniles than to adults. That risk is both serious and substantial.

---

[2] Although plaintiffs do not rely on an intent to punish, any claim by defendants that they lacked an intent to punish is absurd since they imposed extraordinarily harsh conditions and defendants' brief is replete with instances in which plaintiffs were punished for rules infractions. *See* Defs.' Mem. at 1-7; *See also* "Upstate County Jails Are Challenged for Sending Juveniles to Solitary" New York Times, (July 31, 2017), attached as Ex. 39 to Cotter Decl.(". . .[Defendant] Harder, said that most... inmates followed the rules and those who did not needed to be subject to **punishment**.")(emphasis added)

4

Defendants do not set forth the standard that they believe governs plaintiffs' Eighth Amendment challenge to their conditions of confinement. And, with one exception, *Morgan v. Sproat,* 432 F. Supp. 1130 (S.D. Miss. 1977), they do not challenge the applicability or persuasiveness of the cases plaintiffs rely on to show that the conditions in solitary violate the Eighth and Fourteenth Amendments. While defendants are correct that *Morgan* involved civilly committed juveniles as opposed to pretrial detainee juveniles, its holding is persuasive because the Court, relying on expert testimony of the harm and evidence of suicidal ideations, held that confining teenage boys for an average of 11 days in a barren room, where they had little access to mental health services and were not allowed to attend school, violated the 8th Amendment. 432 F. Supp. at 1138-40. Plaintiffs challenge similar conduct here, and *Morgan*, along with the other cases cited in plaintiffs' opening brief, establishes that this conduct violates the Eighth and Fourteenth Amendments.

Defendants also rely on affidavits arguably creating issues of fact concerning certain aspects of solitary. For example, they claim that juveniles are allowed writing materials and three books rather than one book.[3] Any minor issue of fact does not detract from the uncontested and overwhelming proof that juveniles are kept in solitary for 23 hours each day and 24 hours on some days in small cells, that they are deprived of an education and meaningful mental health services and sometimes shackled for their only hour of recreation. Regardless of whether the juveniles can have one book or three, the uncontested proof establishes constitutional violations.

Finally, defendants' citations to cases rejecting adult prisoners' challenges to the amount of recreation they receive, Defs' Mem. at 13, are inapposite because plaintiffs do not claim that

---

[3] Defendants wrongly state inmates are allowed access to books and magazines after their first day in solitary confinement. Jail policies allow inmates to have reading material only after three days in solitary confinement. Inmate Handbook at 35.

allowing only one hour of recreation is in itself unconstitutional. The time allotted to recreation and the conditions in which it is allowed are only one part of the conditions of solitary confinement that plaintiffs do challenge.[4] [5]

## II. DEFENDANTS FAILURE TO CONSIDER MODIFICATIONS TO THEIR DISCIPLINARY POLICIES VIOLATES THE ADA AND SECTION 504

Plaintiffs established in their opening brief that defendants' blanket disciplinary policy, which fails to account for the individual needs of juveniles with disabilities, violates the ADA and Section 504. Pls' Mem. at 22-24. Defendants do not dispute any of the material facts that establish a substantial likelihood of success on plaintiffs' ADA and Section 504 claims. They do not dispute that they do not consult mental health workers prior to, or after, placing a juvenile with mental health or intellectual disabilities in solitary confinement. They do not dispute that individualized assessments are not completed to determine the appropriateness of a placement in solitary confinement and that they do not have an ADA policy. Finally, defendants do not dispute they fail to take proactive measures to accommodate juveniles with mental health and intellectual disabilities.

---

[4] Further cases dealing with adults are unpersuasive because of the developmental differences between adults and adolescents.

[5] Defendants also argue plaintiffs cannot show a likelihood of success because they failed to exhaust administrative remedies. The jail's grievance coordinator alleges he has not received a grievance form from any of the juveniles in question and has never refused a grievance form. Because the PLRA is an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 211-12 (2007), defendants bear the ultimate burden of proving that plaintiffs failed to exhaust *available* administrative remedies on their education claims. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (defining "available" remedies as "accessible or may be obtained" and "capable of use for the accomplishment of a purpose"). In their declarations, plaintiffs allege that their request "slips" to see to see the grievance officer went unanswered and the rare occasions someone did respond they told them the issue was not grievable. *See* A.T. Decl. ¶ 21; B.C. Decl. ¶ 23; C.J. Decl. ¶ 17; J.V. ¶ 12. *See also. V.W.* 236 F. Supp. 3d at 585. Defendants have offered no proof to rebut this claim.

Instead of rebutting the relevant facts or challenging the legal standards set forth in plaintiffs' opening brief, defendants argue that placing a juvenile in the SHU or any housing is not denying them a benefit, service or program under the ADA. Defs' Mem at 14. Plaintiffs do not claim that any particular housing assignment is a program or service. Rather, plaintiffs assert that by placing plaintiffs in solitary, defendants deny them access to many aspects of prison life --- such as school, programs, commissary, phones, and socialization with other inmates --- that have already been treated as programs and services by the Second Circuit. *See Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 73 (2d Cir. 2016) (treating the law library, sick calls, meals, and recreation as programs or services); *Noel v. N.Y.C. Taxi & Limousine Comm'n,* 687 F.3d 63, 68 (2d Cir. 2012)(holding programs, services, and benefits "is a catch-all phrase that prohibits all discrimination by a public entity.")(internal citations omitted) Thus, by failing to consider modifications to their blanket disciplinary policy for teenagers with disabilities, defendants discriminate against the putative ADA subclass. *See id.* at 77-78 (holding that denying meaningful access to prison programs, benefits, or services based on a blanket policy, and without an individualized assessment violates the ADA); *see also Scherer v. Pa. Dep't of Corr.*, No. 3:2004-191, 2007 U.S. Dist. LEXIS 84935, at *132 (W.D. Pa. 2007) (stating that because the prisoner's misconduct may have been a result of his mental illness, "the lack of modification of its disciplinary procedures to account for . . . [his] mental illness . . . possibly resulted in a violation of the ADA")[6]; *Biselli v. Cty. of Ventura*, No. 09-cv-08694 CAS (Ex), 2012 U.S. Dist. LEXIS 79326, at *44-45 (C.D. Cal. June 4, 2012) (finding that placement in

---

[6] Defendants also rely on *Scherer;* however the sections they presumably rely on analyzed an ADA disparate treatment claim. Plaintiffs bring a failure to accommodate and not a disparate treatment claim. Arguably *Scherer* also pled a failure to accommodate claim, *Scherer*, 2007 U.S. Dist. LEXIS 84935, at * 31; however, the court failed to analyze it.

7

administrative segregation based on conduct specifically linked to mental illness, without input from mental health staff, may constitute violation of the ADA); *Snider v. Motter*, No. 4:13-CV-01226, 2016 U.S. Dist. LEXIS 72718, at *26-27 (M.D. Pa. 2016) (holding that a prisoner states a claim for discrimination under the ADA where the prisoner is disciplined for behaviors that are a manifestation of his disabilities and defendants failed to accommodate those disabilities); *see also* Letter from Thomas E. Perez, Assistant Attorney Gen., Civil Rights Div., U.S. Dep't of Justice, to The Honorable Tom Corbett, Governor of Pa., *Re: Investigation of the State Correctional Institution at Cresson and Notice of Expanded Investigation*, 33-34 (May 31, 2013), attached to Cotter Decl. as Ex. 37.

### III. THE PROPOSED STATE COMMISSION ON CORRECTIONS REGULATIONS AND PLAINTIFFS' SETTLEMENT WITH THE CHENANGO VALLEY CENTRAL SCHOOL DISTRICT DO NOT MOOT PLAINTIFFS' CLAIMS AGAINST THE SHERIFF'S OFFICE DEFENDANTS

A case may be deemed moot only if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal citations, quotations, and ellipses omitted); *accord, Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Defendants bear the heavy burden of establishing mootness. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (referring to "heavy burden" of establishing mootness). Defendants have not met their burden.[7]

Although the State Commission on Corrections' proposed new regulations change the amount of time individuals can serve in solitary confinement and the process for denying a

---

[7] Defendants do not argue that Plaintiffs' ADA and Section 504 claims are moot.

8

student educational instruction, the proposed regulatory changes are just that, proposed. *See* Affidavit of Robert Behnke ¶¶ 9-11, Ex A. at 2-3. Therefore, they cannot be the basis for dismissing plaintiffs' Eighth and Fourteenth Amendment claims. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (stating that it must be absolutely clear the alleged wrongful behavior could not reasonably be repeated for a case to be dismissed as moot).

Even if the regulations were in effect, they would not resolve plaintiffs' claims. Despite defendants' self-serving, unsupported claims, they will still be able to hold juveniles in small cells for 22 hours a day for weeks and months at a time. *See* Weisman Decl. ¶¶ 61-67 (explaining why the proposed regulations are not sufficient to address plaintiffs' claims).[8] Defendants do not promise that they will not place juveniles in long-term solitary confinement, admit any wrongdoing, or discuss how they would treat the putative class members differently under the new regulations. *See Sasnett v. Litscher*, 197 F.3d 290, 291(7th Cir. 1999) (holding a rule change did not moot a case where prison officials stated they had no intention of going back to the old rule but continued to argue that it was lawful) *abrogated in part on other grounds by Bridges v. Gilbert*, 557 F.3d 541, 547 (7th Cir. 2009). Even if Defendants had offered assurance of compliance with the proposed regulations, which they did not, the issues before this Court are broader than the proposed regulations, leaving plaintiffs vulnerable to abusive practices that are not covered by the regulations and may be prevented through injunctive relief. *See Longstreth v. Maynard*, 961 F.2d 895, 900 (10th Cir. 1992) (holding the promulgation of new regulations did

---

[8] Defendants repeatedly assert that inmates will be outside of their cell for six hours under the regulations; this is not true. Only two hours of recreation are mandatory under the regulations. The other four hours are discretionary. If the defendants determine the juvenile is a threat to the safety or security of the facility, they can deny him recreation. It is clear from defendants' responsive papers and the available disciplinary records that defendants would rarely find a juvenile not to be a threat. *See* Defs' Mem. at 1-8; Weisman Decl. ¶¶ 61-67.

9

not moot a prisoner's claim when they were not fully responsive to his claims); *Gluth v. Kang as*, 951 F.2d 1504, 1507 (9th Cir. 1991) (holding that the creation of a new policy did not deprive the court of a justiciable controversy where there is doubt it will be responsive to the claims asserted); *cf. White v. Lee*, 227 F. 3d 1224, 1243 (9th Cir. 2000) (holding that a permanent policy change that addressed the entirety of plaintiffs' complaint and had been in effect without backsliding for several years satisfied the "heavy burden" of showing mootness).

Nor do the school-district settlement and the new regulations moot plaintiffs' education claims. Plaintiffs' 14th Amendment education and Individuals with Disabilities Education Act ("IDEA") claims against the Sheriff's Office defendants are in no way resolved by the settlement agreement with the School District. This record contains no evidence that defendants will provide students in solitary confinement with the educational instruction they are entitled to under the law. *See City of Mesquite* 455 U.S. at 289 n.10. In fact, record evidence demonstrates that the Sheriff's Office does not even comply with the current SCOC education regulations. *Compare* N.Y. Comp. Codes R. & Regs. tit. 9 § 7070.7 (2018) (requiring the Chief Administrative Officer to supply a juvenile with a written determination of why and for how long they will be deprived of education) *with* A.T. Decl. ¶¶ 18 (stating he never received any notice or opportunity to heard prior to being deprived of educational instruction); O.C. Decl. ¶ 13 (same); D.K. Decl. ¶ 19 (same); B.C. Decl. ¶ 15 (same); C.J. Decl. ¶ 14 (same).

## CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated: March 12, 2018
Syracuse, New York

                                        Respectfully submitted,

                                        /s/

Joshua T. Cotter
Susan M. Young
George Haddad
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202
Tel: (315) 703-6500

*Attorneys for Plaintiffs*