# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
A.T., a minor, by and through his parent and
natural guardian Sha-Keema Tillman, et al.,
on behalf of themselves and all others
similarly situated,

              Plaintiffs,              17-CV-0817 (DNH) (DEP)

      v.

DAVID HARDER, Broome County Sheriff, in his
official capacity, et al.

              Defendants.
------------------------------------------------------------x

## STIPULATION AND ORDER FOR A FINAL SETTLEMENT AGREEMENT

**WHEREAS**, Plaintiffs filed a class action Complaint alleging that, by locking juveniles in closed cells for disciplinary purposes, the Sheriff's Office violated Plaintiffs' rights under the Americans' with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Eighth and Fourteenth Amendments to the United States Constitution and that, by denying juveniles educational instruction without procedural protections and special education and related services, Defendants violated Plaintiffs' rights under the Fourteenth Amendment and the Individuals with Disabilities Education Act;

**WHEREAS**, the Court certified a class and two subclasses and issued a preliminary injunction in this Action on April 4, 2018;

**WHEREAS**, since the initiation of this Action, the Defendants have provided Plaintiffs with extensive data and documents concerning the disciplinary and education policies and practices for juveniles at the Broome County Correctional Facility;

**WHEREAS**, the Parties have engaged in extensive settlement negotiations and have voluntarily agreed to enter into this Settlement Agreement to resolve this Action;

**WHEREAS**, the Parties represent and agree that this Settlement Agreement is fair, reasonable, and adequate to protect the interests of all Parties and the class;

**WHEREAS**, the Parties have negotiated in good faith and have agreed to settle this Action on the terms and conditions set forth herein;

**WHEREAS**, nothing in this Settlement Agreement shall be construed as an admission of law or fact or acknowledgement of liability, wrongdoing, or violation of law by the Defendants regarding any of the allegations contained in the Complaint in this Action, or as an admission or acknowledgement by Defendants concerning whether Plaintiffs are the prevailing party in this action by virtue of this Settlement Agreement; and

**WHEREAS**, the agreement and any Order entered therein shall have no precedential value or effect whatsoever, and shall not be admissible, in any other action or proceeding as evidence or for any other purpose, except in an action or proceeding to enforce this Agreement;

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED AS FOLLOWS:**

## DEFINITIONS

As used in this Agreement:

**Action** means *A.T., et. al. v. Harder, et. al.*, Case No. 17-CV-0817 (United States District Court for the Northern District of New York), filed July 25, 2017.

**Plaintiffs or Plaintiffs Class** means the named Plaintiffs and the putative class and subclasses as certified by the Court in this Action.

**Defendants** means David Harder, and Mark Smolinsky in their official capacity, and the Chenango Valley Central School District.

**Parties** means the Plaintiffs and Defendants in this Action.

**School District** means the Chenango Valley Central School District.

**Sheriff's Office** means the Broome County Sheriff's Office and Sheriff's Office personnel.

**Sheriff's Office Defendants** means David Harder, and Mark Smolinsky in their official capacity.

**Discipline/Disciplinary** means punitive actions taken in response to alleged misbehavior, including, but not limited to, the imposition of keep-lock, administrative segregation, or protective custody.

**Effective Date** means the date of entry of the order of United States District Court for the Northern District of New York approving this Settlement Agreement.

**Correctional Facility or Jail** means the Broome County Correctional Facility.

**Juvenile(s)** means any person or persons under eighteen years of age.

**Youth Coalition Team** means the multi-disciplinary team of the Sheriff's Office staff, medical and mental health staff contracted to provide health-related services at the Jail, and the Chenango Valley School District staff assigned to supervise, educate, care for, or work with juveniles at the Jail.

**Settlement Agreement or Agreement** means this Stipulation and Order for a Final Settlement Agreement between the Parties.

## I.  BEHAVIOR MANAGEMENT

### A. Restrictions on the Use of Confinement

1. No juvenile may be locked in a closed cell for disciplinary purposes unless the juvenile poses an imminent threat to the safety and security of the facility and less restrictive measures will not adequately address the threat. Such confinement shall be for the minimum period of time necessary to resolve the threat.

2. As soon as practicable after locking a juvenile in his or her cell pursuant to paragraph I(A)(1), a correction officer shall create a written incident report, describing the imminent threat to the safety and security of the facility and the less-restrictive measures that were used before confinement.

3. To ensure compliance with paragraph I(A)(1), the correction officer on duty shall as soon and as frequently as practicable assess the behavior of any juveniles who are locked in their cells and shall release any juvenile from confinement when the correction officer observes that the imminent threat to the safety and security of the facility is resolved. While conducting such reviews the staff member shall employ tactics such as crisis intervention, de-escalation, or mediation in order to attempt to resolve the threat. If the threat has not been resolved, the correction officer shall update the appropriate incident report to document any intervention measures that were deployed.

4. The Sheriff's Office shall promptly notify mental health whenever a juvenile is confined to their cell pursuant to their cell pursuant to paragraph (I)(A)(1) so that mental health staff may as soon as practicable employ meditation or crisis intervention techniques to resolve the threat,

4

provided that the mental health staff is available to do so and deem such techniques to be appropriate. When such techniques are used, they shall be documented.

5. No juvenile shall be locked in a cell pursuant to paragraph I(A)(1) beyond the 8-hour staff shift during which the juvenile was first placed in such confinement unless the next shift's incoming Security Lieutenant first interviews the juvenile, conducts a review of all relevant documentation including the incident report, and determines that continued confinement is necessary pursuant to the standard in paragraph I(A)(1). The Security Lieutenant shall document his/her conclusions on the incident report, including the specific facts upon which the Security Lieutenant concludes that the juvenile poses an imminent threat to the safety and security of the facility, update the inmate information system, and, if continued confinement is found necessary, notify the Major. No juvenile shall be locked in a cell pursuant to paragraph I(A)(1) for subsequent 8-hour staff shifts unless the Security Lieutenant conducts the review and does the documenting described in this paragraph at the beginning of each subsequent shift.

6. No juvenile shall be locked in a cell pursuant to paragraph I(A)(1) beyond three (3) consecutive 8-hour staff shifts unless the Major, or his designee in the event he is unavailable, interviews the juvenile, conducts a review of all relevant documentation including the incident report, and determines that continued confinement is necessary pursuant to the standard in paragraph I(A)(1). The Major or his designee shall document his or her conclusions on the incident report in the same manner as required in paragraph I(A)(5). In the event continued confinement is necessary, the Major, or his designee, will review the juvenile's placement at the end of every

subsequent 8-hour-shift in accordance with this paragraph until it is determined continued confinement is no longer necessary pursuant to the standard in paragraph I(A)(1).

7. Any juvenile locked in a cell pursuant to paragraph I(A)(1) beyond the initial 8-hour staff shift during which the juvenile was first placed in such confinement shall, during the subsequent 8-hour staff shift, be seen by a medical/mental health professional who will assess and document: (a) whether the juvenile poses an imminent threat of bodily harm to self or others because of a mental health concern or (b) whether the juvenile is experiencing serious harm as a result of their cell confinement. If the licensed medical/mental health professional determines either to be the case, the Sheriff's Office shall follow the alternative placement or behavior management recommendations of the licensed medical/mental health professional.

8. Any juvenile locked in a cell pursuant to paragraph I(A)(1) shall be afforded all privileges including but not limited to recreation, showers, visitation and education, they are entitled under the law, and access to any other services to which they are entitled under the law.

### B. Implementation of a Comprehensive Behavior Management System

9. To effectuate section I(A) of this Agreement while maintaining the safety of the Jail, the Sheriff's Office shall implement a comprehensive behavior management system that shall include, at a minimum, (a) an incentive program for juveniles with a reward system to encourage positive behavior, including, but not limited to, participation in programming and education services; (b) a list of prohibited behaviors and their consequences (including a list of those behaviors for which a juvenile may be placed in confinement under paragraph I(A)(1)); (c) a least-restrictive sanctions system where sanctions are proportional to the alleged

misbehavior; and (d) a description of the full range of programming offered at the Jail by the Sheriff's Office and the Chenango Valley School District.

10. The Sheriff's Office shall apply a least-restrictive sanctions system including, but not limited to, the following: (i) on the spot correction; (ii) counseling; (iii) conflict resolution or mediation services; (iv) removal of points or privileges earned under the incentive system; and (v) the imposition of a work task for the day.

11. The Sheriff's Office shall maintain a Youth Coalition Team to work with juveniles at the Jail. The team shall meet bi-monthly to discuss juveniles' behavior and strategies to better serve the juveniles at the facility.

12. The Sheriff's Office shall develop and provide an addendum to the Inmate Handbook for juveniles upon their entry into the Jail that explains the behavior management system. The Sheriff's Office shall also update its disciplinary directives or create a new directive to describe the behavior management system and issue a memorandum to staff members that explains the behavior management system.

13. In response to a behavior which results in isolation pursuant to paragraph I(A)(1), the Youth Coalition Team shall develop, and the Sheriff's Office shall implement, individual behavior management plans for each juvenile following the juvenile's isolation period at the Jail that will identify the special needs of the juvenile and any accommodations required for the juvenile's medical, mental health, or educational needs. If a licensed mental health professional has identified a juvenile as having a chronic or serious mental illness, the behavior management plans shall accommodate these juveniles by requiring that alternatives to disciplinary confinement be used.

14. The Sheriff's Office shall make good-faith efforts to expand programming available to juveniles. The Youth Coalition Team shall ensure that juveniles are informed of, and have access to, the programming available to them.
15. The Sheriff's Office shall train the Youth Coalition Team members and Jail staff who interact with juveniles on the behavior management system and on techniques and best practices in supervising juveniles in an institutional context, including, but not limited to, training on brain development, conflict resolution, de-escalation and mediation techniques for juveniles, crisis management, and mental health.
16. Licensed mental health professionals from the Youth Coalition Team shall provide any juvenile with psychosocial group counseling or psychiatric assessment and treatment as found necessary by the professionals.

## II. EDUCATION

17. The Sheriff's Office will provide sufficient classroom space in the Jail, and security staff to escort juveniles to that classroom space and supervise juveniles during instruction, as the School District determines is necessary to meet the educational obligations set forth in their Settlement Agreement with the Plaintiffs.

## III. REPORTING AND MONITORING

18. In the event Plaintiff's counsel are unable to resolve disputes with the Sheriff's Office Pursuant to section IV of this agreement, Plaintiff's counsel and their experts may conduct tours of the facility when a tour is relevant, upon advanced notice to the Sheriff's Office and their counsel. Said tours shall be limited to areas of the facility relevant to the dispute and shall be at a time approved by the Sheriff's Office.

8

19. Within ten (45) days of the Effective Date, the Sheriff's office shall provide Plaintiffs' counsel with:

   a. the Juvenile addendum to the Inmate Handbook, a new Minor Inmate Behavior Development and Management directive or updated disciplinary directive, and memorandum issued pursuant to paragraph I(B)(6).

   b. the training materials used to train the Youth Coalition Team members and Jail staff who interact with juveniles pursuant to paragraph I(B)(12).

20. By no later than the seventh day of each month, the Sheriff's Office shall provide Plaintiffs' counsel with:

   a. copies of all incident reports and forms that document the charges and the time in and time out of confinement for juveniles locked in a cell pursuant to paragraph I(A)(2) during the previous month;

   b. copies of any behavior management plans for the previous month that were updated pursuant to paragraph I(A)(6);

   c. a spreadsheet with the following data for the previous month: (i) all incidents during which a juvenile was locked in their cell pursuant to paragraph I(A)(2) for that month, including their name, ICN, race, sex, and date of birth (month/year); (ii) the behavior that resulted in confinement; (iii) confinement begin date and time; (iv) confinement end date and time; and (v) any remarks relating to the confinement;

9

21. Counsel for the plaintiffs may email Major Mark Smolinsky with any questions regarding compliance with this Agreement, with a copy of the email to the counsel for the Sheriff's Office. If Major Smolinsky is no longer available to answer questions, the Sheriff's Office shall identify a new individual who is available.

## IV. ENFORCEMENT

22. The Parties agree and jointly request that the Court find that this Agreement satisfies the requirements of 18 U.S.C. § 3626(a).

23. The Parties commit to work in good faith to avoid enforcement actions. If Plaintiffs believe that Defendants are not in compliance with a provision of this Settlement Agreement, Plaintiffs shall give notice to all parties in writing and shall state with specificity the alleged non-compliance. Upon receipt of such notice by Defendants, the Parties will promptly engage in good-faith negotiations concerning the alleged non-compliance and appropriate measures to cure any non-compliance. If Plaintiffs and the Defendants have not reached an agreement on the existence of the alleged non-compliance and curative measures within twenty-one (21) days after receipt of such notice of alleged non-compliance, Plaintiffs may seek all appropriate judicial relief with respect to such alleged non-compliance, upon two (2) business days' prior notice ("Escalation Notice") to counsel for the Defendants, which notice shall inform such counsel that Plaintiffs intend to seek judicial relief. The Parties may extend these time periods by written agreement. Nothing said by any party or counsel for any party during the good-faith negotiations referenced in this paragraph may be used by the other party or parties in any subsequent litigation, including, without limitation, litigation in connection with this Agreement, for any purpose whatsoever.

24. Notwithstanding the dispute resolution procedures set forth above, if exigent circumstances arise, Plaintiffs may seek expedited judicial relief against the Defendants based upon an alleged breach of this Agreement, upon three (3) business days' prior notice to counsel for the Defendants.

25. The failure by any party to enforce any provision of this Agreement with respect to any deadline or other provision herein shall not be construed as a waiver of their right to enforce deadlines or provisions of this Agreement.

## V.   MODIFICATION

26. This Agreement may not be modified without the written consent of the Parties and the approval of the Court.

## VI.   SETTLEMENT TERM

27. This Agreement is effective immediately upon the final approval of the Court.

28. This Agreement shall expire on October 1, 2019, unless juveniles continue to be housed at the Jail, in which case this Agreement shall expire after the Sheriff's Office notifies the Court and Plaintiffs confirm that all juveniles have been permanently removed from the Jail and will no longer be housed there.

## VII. EXECUTION AND BINDING EFFECT

29. This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the full efficacy of a signed original. Photocopies and PDFs of such signed counterparts may be used in lieu of the originals for any purpose.

30. The undersigned representative of each party to this Agreement certifies that each is authorized to enter into the terms and conditions of this Agreement and to execute and bind legally such party to this document.

31. The terms and conditions of this Agreement, and the commitments and obligations of the Parties, shall inure to the benefit of, and be binding upon, the successors and assigns of each party.

## VIII. ENTIRE AGREEMENT

32. This Agreement contains all the terms and conditions agreed upon by the Parties with regard to the final settlement contemplated herein, and, following the Court's final approval, supersedes all prior agreements, representations, statements, negotiations, and undertakings (whether oral or written) with regard to the settlement of this Action.

## IX. NOTIFICATIONS TO COUNSEL

33. Notices and other written communications pursuant to this Agreement shall be in writing. Notices shall be addressed to the attorneys of the respective parties specified in the signature pages of this Agreement.

34. In the event that any substitution is to be made in counsel to receive communications under this Agreement, all counsel shall be informed, and the name and contact information for substitute counsel shall be provided.

## X.  ATTORNEYS' FEES AND COSTS

35. The parties agree they will negotiate in good faith regarding the attorneys' fees and costs to be paid by the Sheriff's Office. In the event that the parties reach an impasse in their negotiations, they will notify the Court in writing of the same, at which point the Plaintiffs will have thirty days to bring a motion for attorneys' fees and costs.

_____
Joshua T. Cotter, Esq.
Susan M. Young, Esq.
Samuel C. Young, Esq.
George Haddad, Esq.
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202
Tel: (315) 703-6500
jcotter@lscny.org

*Attorneys for Plaintiffs*

_____
Robert Behnke, Esq.
Broome County, Department of Law
Broome County Office Building, 6th Fl
60 Hawley St.
Binghamton, New York 13902
Tel. (607)-778-2117
Rbehnke.co.broome.ny.us

*Attorney for the Sheriff's Office Defendants*

Dated: June ___, 2018

SO ORDERED this ___ day of _____, 2018

_____
UNITED STATES DISTRICT JUDGE

13